# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREG ERICKSON, Individually and derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>AUBREY K. MCCLENDON, RICHARD K. DAVIDSON, V. BURNS HARGIS, FRANK KEATING, BREENE M. KERR, CHARLES T. MAXWELL, DON NICKELS, FREDERICK B. WHITTEMORE, MERRILL A. MILLER, JR., KATHLEEN M. EISBRENNER, and LOUIS A. SIMPSON, )<br><br>Defendants, )<br><br>and )<br><br>CHESAPEAKE ENERGY CORPORATION, an Oklahoma Corporation, )<br><br>Nominal Defendant. ) | Case No. 5:12-cv-631-M |

## PLAINTIFF GREG ERICKSON'S MOTION TO CONSOLIDATE AND APPOINT LEAD COUNSEL WITH MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................... - 2 -

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................ - 4 -

        A.      The 2012 Derivative Actions Are Filed .................................... - 6 -

III.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED .......................... - 7 -

IV.     THIS COURT SHOULD APPOINT ROBBINS UMEDA, THE HOLZER
        FIRM, AND JOHNSON & WEAVER AS CO-LEAD COUNSEL .................... - 8 -

        A.      Proposed Lead Counsel Have By Far Conducted the Most Thorough
                Investigation as Reflected in Their Unrivaled Complaint ........................ - 9 -

        B.      Proposed Lead Counsel Have Substantial Expertise in Litigating
                Shareholder Derivative Actions ............................................................. - 11 -

        C.      Proposed Lead Counsel Is in the Best Position to Effectively and
                Efficiently Lead the Litigation .............................................................. - 16 -

V.      CONCLUSION ....................................................................................... - 17 -

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Blagg v. Line*, 09-CV-0703-CVE-FHM,
  2012 WL 90439 (N.D. Okla. Jan. 11, 2012) ............................................................. 6

*In re Atmel Corp. Derivative Litig.*,
  No. C 06-4592 JF (HRL), 2008 WL 2561957 (N.D. Cal. June 25, 2008) ............... 2

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................. 8

*In re Green Mountain Coffee Roasters, Inc., Derivative Litig.*,
  No. 2:10-cv-233, 2012 WL 1493823 (D. Vt. Apr. 27, 2012) ................................. 7

*Moradi v. Adelson*,
  No. 11-CV-490-GMN-RJJ, 2011 WL 5025155 (D. Nev. Oct. 20, 2011) .............. 7

*Resnik v. Woertz*,
  774 F. Supp. 2d 614 (D. Del. 2011) ........................................................................ 7

*Skirvin v. Mesta*,
  141 F.2d 668, 672 (10th Cir. 1944) ........................................................................ 6

## OTHER AUTHORITIES

Fed. R. Civ. P.
  42(a) ........................................................................................................................ 6

Plaintiff Greg Erickson ("Plaintiff") respectfully moves to consolidate the related 2012 Derivative Actions[1] and to appoint Robbins Umeda LLP ("Robbins Umeda"), Holzer Holzer & Fistel, LLC ("Holzer Firm"), and Johnson & Weaver, LLP ("Johnson & Weaver") as Co-Lead Counsel for the consolidated litigation, and Derryberry & Naifeh LLP as Liaison Counsel (collectively with proposed Co-Lead Counsel, "Proposed Lead Counsel"). Plaintiff further requests that this Court deny the various motions to consolidate and appoint lead counsel in the related 2012 Derivative Actions (and any subsequent related derivative actions) filed in this Court on behalf of Chesapeake Energy Corporation ("Chesapeake" or the "Company").

## I.    INTRODUCTION

To ensure the efficient and effective management of the derivative litigation, Plaintiff believes that the Court should consolidate the 2012 Derivative Actions. The Court should also appoint Proposed Lead Counsel as lead counsel in this matter for two principal reasons. First, no other complaint comes close to matching the

---

[1] "2012 Derivative Actions" refers collectively to this action and the following related actions currently pending before this Court: (i) *Deborah G. Mallow IRA SEP Inv. Plan v. McClendon, et al.*, No. 5:12-cv-436-M, filed Apr. 19, 2012; (ii) *Snyder v. McClendon, et al.*, No. 5:12-cv-437-M, filed Apr. 20, 2012; (iii) *Dolezal Family Ltd. P'ship v. McClendon, et al.*, No. 5:12-cv-477-M, filed Apr. 30, 2012; (iv) *Leonard v. McClendon, et al.*, No. 5:12-cv-479-M, filed Apr. 30, 2012; (v) *Shochat v. McClendon, et al.*, No. 5:12-cv-488-M, filed May 1, 2012; (vi) *David A. Kroll Emps.' Profit-Sharing Plan & Trust v. McClendon, et al.*, No. 5:12-cv-493-M, filed May 2, 2012; (vii) *Robaczynski v. McClendon, et al.*, No. 5:12-cv-501-M, filed May 3, 2012; (viii) *Spiegel v. McClendon, et al.*, No. 5:12-cv-502-M, filed May 3, 2012; (ix) *Rosengarten v. McClendon, et al.*, No. 5:12-cv-505-M, filed May 3, 2012; (x) *Alberts v. McClendon, et al.*, No. 5:12-cv-545-M, filed May 11, 2012; and (xi) *Gerber v. McClendon, et al.*, No. 5:12-cv-584-M, filed May 21, 2012.

comprehensiveness and detail of Plaintiff's amended complaint filed contemporaneously with this motion.  Second, Proposed Lead Counsel have aggressively pursued justice for Chesapeake and its shareholders for years, moving with speed as needed to protect the Company's rights, but also with precision reflecting Proposed Lead Counsel's expertise and sound judgment.

In contrast, the other shareholder plaintiffs engaged in a race to the bottom to the detriment of Chesapeake.  They rushed to file bare-boned complaints while critical news continued to break.[2]  They rushed to file motions to take lead of the litigation – with at least one such motion being filed by counsel before his client's complaint.  Some have scrambled to file ill-conceived motions that are making an unnecessary mess of this litigation and wasting the resources of the Company and the Court, such as the recently denied motions to enjoin the shareholder meeting.  Consolidation of these new actions not only is necessary, but urgently needed, to bring order to the litigation.

Plaintiff and his Proposed Lead Counsel have demonstrated their leadership and tenacious willingness to seek relief for Chesapeake and its shareholders.  Upon learning of the Reuters' exposé, Proposed Lead Counsel began a meticulous and ongoing

---

[2] This rush to file initial complaints may prove fatal to the entire case if any investor other than Plaintiff is appointed to lead this litigation. On June 21, 2012, a majority of Chesapeake's Board of Directors was replaced by new, supposedly independent members. Plaintiffs' initial complaint provided sufficient allegations to be validly in litigation at the time of its filing, while the other investors' bare-boned complaints may well be subject to dismissal on demand futility grounds. *See In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2008 WL 2561957, at *5-8 (N.D. Cal. June 25, 2008) (applying Delaware law in determining relevant board composition for purpose of demand futility analysis).

investigation into the new allegations and devoted substantial time and resources to prepare a comprehensive amended complaint (the "Amended Complaint"). The Amended Complaint not only reflects Proposed Lead Counsel's extensive investigation, but also their detailed, original analysis that is unmatched in any complaint filed with this Court by a Chesapeake shareholder.

For these and the reasons set forth below, Plaintiff requests that the Court grant his motion, consolidate the 2012 Derivative Actions, and appoint Proposed Lead Counsel as lead counsel.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of April 18, 2012, Reuters revealed that McClendon had taken personal loans estimated at $1.1 billion from lenders, at least one of which received preferred shares of Chesapeake in separate financing transactions. ¶6.[3] As detailed more fully in the Amended Complaint, McClendon has engaged in a complicated series of financial transactions whereby he pledged his interests in the Founders Well Participation Program ("FWPP") as collateral for loans obtained from private equity firms. ¶¶63-66. He then used proceeds from the loan to pay for, among other things, the costs associated with his participation in the FWPP. *Id.* By structuring his finances in this way, McClendon created a situation where at any moment he could be forced to choose

---

[3] All "¶" and "¶¶" references herein are to Plaintiff's Amended Shareholder Derivative Complaint for Breach of Fiduciary Duties, Waste of Corporate Assets, Unjust Enrichment, and Violations of the Securities and Exchange Act Of 1934, filed June 25, 2012.

between his own personal wealth and the well-being of Chesapeake and its shareholders. ¶¶68-69.

Following the Reuters exposé, the Securities and Exchange Commission ("SEC") announced it was opening another investigation into defendant McClendon's participation in the FWPP (¶92), and S&P downgraded Chesapeake's debt citing corporate mismanagement as a primary reason. ¶112. The Board, in an effort to counter some of the negative publicity generated from McClendon's scandalous conduct, removed McClendon as its chairman and terminated his participation in the FWPP. ¶¶105-08.

Shortly thereafter, Reuters revealed that McClendon ran a $200 million undisclosed hedge fund from 2004 to 2008 that traded in the same commodities Chesapeake produced. ¶¶114-23. McClendon ran this hedge fund, and spent considerable time doing so, while he was supposedly the full-time CEO of Chesapeake. *Id.* Despite the fact McClendon's employment agreement prohibited him from engaging in any business independent from employment by the Company that required any substantial portion of his time during the time period, the Board not only failed to end McClendon's involvement in the fund, but also failed to disclose to shareholders any material facts relating thereto. ¶¶126-35. The revelation of these hedging activities has sparked calls from at least one U.S. senator for a Department of Justice investigation and exposes Chesapeake to significant harm. ¶¶82, 111.

## A.   The 2012 Derivative Actions Are Filed

After Reuters published its initial investigative report, at least twelve actions were filed alleging primarily derivative claims on behalf of Chesapeake against its Board. The related shareholder derivative actions that have been filed are as follows:

| Case Caption | Case Number | Date Filed |
| --- | --- | --- |
| *Deborah G. Mallow IRA SEP Invest. Plan v. McClendon, et al.* | 5:12-cv-436-M | April 19, 2012 |
| *Snyder v. McClendon, et al.* | 5:12-cv-437-M | April 20, 2012 |
| *Dolezal Family Ltd. P'ship v. McClendon, et al.* | 5:12-cv-477-M | April 30, 2012 |
| *Leonard v. McClendon, et al.* | 5:12-cv-479-M | April 30, 2012 |
| *Shochat v. McClendon, et al.* | 5:12-cv-488-M | May 1, 2012 |
| *David A. Kroll Inc. Emps.' Profit-Sharing Plan and Trust v. McClendon, et al.* | 5:12-cv-493-M | May 2, 2012 |
| *Robaczynski v. McClendon, et al.* | 5:12-cv-501-M | May 3, 2012 |
| *Spiegel v. McClendon, et al.* | 5:12-cv-502-M | May 3, 2012 |
| *Rosengarten v. McClendon, et al.* | 5:12-cv-505-M | May 3, 2012 |
| *Alberts v. McClendon, et al.* | 5:12-cv-545-M | May 11, 2012 |
| *Gerber v. McClendon, et al.* | 5:12-cv-584-M | May 21, 2012 |
| *Erickson v. McClendon, et al.* | 5:12-cv-631-M | June 5, 2012 |

Several of these plaintiffs have also filed motions for consolidation and leadership:

- The Dolezal Family Limited Partnership ("Dolezal") filed the first motion for consolidation and leadership on April 30, 2012 [5:12-cv-477-M, Dkt. No. 7]. Amazingly, the motion was filed even before the complaint in the action. *See* Dolezal docket. The motion for consolidation and leadership, however, was struck for not being "docketed correctly" and for containing blank pages. It was re-filed the following day and is currently pending before this Court.

- Deborah G. Mallow IRA SEP Investment Plain ("Mallow") next filed a cross-motion for consolidation and leadership and an opposition to the Dolezal motion on May 3, 2012, on behalf of themselves and plaintiffs Leonard and Snyder [5:12-cv-436-M, Dkt. No. 15]. On May 14, 2012, they also filed a preliminary injunction and motion for expedited discovery that was stricken for not having a certificate of service and re-filed the following day. The Mallow cross-motion for consolidation and leadership is also currently pending before this Court.

- Plaintiff Shochat also filed a cross-motion for consolidation and leadership as well as an opposition to the other two pending motions for consolidation and leadership on May 9, 2012 [5:12-cv-488-M, Dkt. No. 7].

- On May 16, 2012, plaintiff Mallow filed a response in support of their earlier cross-motion for consolidation and leadership and an opposition to the motion filed by plaintiff Shochat, this time on behalf of themselves and plaintiffs Snyder, Dolezal, Leonard, David A. Kroll, Inc. Employees' Profit Sharing Plan and Trust, and Spiegel [5:12-cv-436-M, Dkt. No. 19].

All parties appear to agree these twelve cases should be consolidated, but the central issue that remains is which law firms are best suited to prosecute the interests of Chesapeake.[4]

## III.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of the 2012 Derivative Actions is appropriate because they arise from similar allegations against similar defendants involving common questions of law and fact. Fed. R. Civ. P. 42(a). The Court has discretion on whether to consolidate the 2012 Derivative Actions for any or all purposes (including trial) to the extent the actions involve a common question of law or fact. Fed. R. Civ. P. 42(a); *Skirvin v. Mesta*, 141 F.2d 668, 672 (10th Cir. 1944); *Blagg v. Line*, No. 09-CV-0703-CVE-FHM, 2012 WL 90439, at *1 (N.D. Okla. Jan. 11, 2012). Moreover, "[c]onsolidation is particularly

---

[4] Further, on April 26, 2012, Plaintiffs Dvora and Steven S. Weinstein filed a class action complaint in this Court, No. 5:12-cv-465-M, alleging federal securities fraud violations under SEC Rule 10b-5 and Section 20(a) of the Securities and Exchange Act of 1934, and on June 5, 2012, Plaintiff Operating Engineers Construction Industry and Miscellaneous Pension Fund also filed a class action complaint alleging similar violations, No. 5:12-cv-640-M ("Securities Class Actions"). On June 19, 2012, Plaintiff Debra Boggs filed an ERISA-based class action, No. 5:12-cv-688-M. These actions, however, involve different claims, legal standards, and questions of law than the derivative actions, and thus, the class actions are generally ill-suited for consolidation with the derivative actions.

important in shareholder derivative litigation, where stockholders sue on behalf of the corporation they own, not in their own right." *In re Green Mountain Coffee Roasters, Inc., Derivative Litig.*, No. 2:10-cv-233, 2012 WL 1493823, at *1 (D. Vt. Apr. 27, 2012).

Because of the overlap of certain factual and legal issues asserted in the 2012 Derivative Actions, hearing all the matters in a single, consolidated action would preserve judicial and party resources, avoid inconsistent rulings, and greatly facilitate the administration of justice. *Resnik v. Woertz*, 774 F. Supp. 2d 614, 624-25 (D. Del. 2011). Indeed, if the Court consolidates the 2012 Actions and appoints Proposed Lead Counsel to lead the litigation, the Amended Complaint filed contemporaneously herewith can serve as the consolidated complaint for the 2012 Derivative Actions, meaning litigation of the claims asserted in the 2012 Derivative Actions (the "2012 Claims") could start much sooner than if the Court had to wait for new counsel to start work on a consolidated complaint.

As such, all of the 2012 Derivative Actions should be consolidated into this action.

## IV. THIS COURT SHOULD APPOINT ROBBINS UMEDA, THE HOLZER FIRM, AND JOHNSON & WEAVER AS CO-LEAD COUNSEL

In deciding upon appropriate lead counsel in a derivative action, courts consider a number of factors, including: "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel." *Moradi v. Adelson*, No. 11-CV-490-GMN-RJJ, 2011 WL 5025155, at *2 (D. Nev. Oct. 20, 2011). Additionally, courts often take into account "(i) counsel's work to identify or investigate potential causes of action; (ii) counsel's experience in overseeing complex litigation; (iii) counsel's

knowledge of relevant principles; and (iv) the resources counsel has available to zealously pursue the lawsuit." *In re Life Partners Holdings, Inc. S'holder Derivative Litig.*, Case No. DR-11-CV-43, slip op. at 3 (W.D. Tex. May 9, 2012) attached as Ex. 1 to the Declaration of Darren Derryberry in Support of Plaintiff Greg Erickson's Motion to Consolidate and Appoint Lead Counsel ("Derryberry Decl."), filed concurrently herewith (citing *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009)).

As detailed below and in the declarations of Darren Derryberry and Jay N. Razzouk,[5] Robbins Umeda, the Holzer Firm, and Johnson & Weaver have worked diligently to pursue the best interests of the Company in the pending litigation. Moreover, Proposed Lead Counsel have already demonstrated a firm commitment to vigorously and effectively prosecute this matter. Indeed, current Proposed Lead Counsel are not just adequate, but, as demonstrated by the quality of their pleadings, are the *best plaintiff and counsel to prosecute this case.*

A.   **Proposed Lead Counsel Have By Far Conducted the Most Thorough Investigation as Reflected in Their Unrivaled Complaint**

Proposed Lead Counsel have a long record of seeking to hold Chesapeake's Board accountable for the actions that have caused significant harm to the Company and have litigated the current action both efficiently and effectively, being able to move deftly

---

[5] Declaration of Jay N. Razzouk in Support of Plaintiffs Arnold and Clem's Consolidated Response in Opposition to Motions and Cross Motions to Consolidate and Appoint Lead ("Razzouk Decl.") [Dkt. #57], *In re Chesapeake Energy Shareholder Derivative Litigation*, No. 11-CIV-985-M (W.D. Okla. May 22, 2012). A copy of the Razzouk Decl. (without exhibits) is attached as Ex. 2 to the Derryberry Decl.

when necessary and having the patience to meticulously investigate any potential causes of action. Proposed Lead Counsel has by far conducted the most thorough investigation into the facts that have come to light. Unlike the newly-arrived counsel, Proposed Lead Counsel was willing to devote the time and resources to properly investigate and analyze the facts giving rise to the 2012 Claims before filing (or proposing) a complaint alleging those claims. Despite the blatant rush to the courthouse by the other shareholders, as news relevant to the 2012 Claims continued to break, Proposed Lead Counsel repeatedly decided that it was in the Company's best interests to hold off on submitting the Amended Complaint so that they could thoroughly investigate and analyze the new revelations. Razzouk Decl., ¶5.

All of the other 2012 Derivative Actions' complaints are missing key facts and analysis that may be critical to securing recovery for the Company. These key facts, omitted from most (if not all) of the other complaints but present in Plaintiff's Amended Complaint, include, but are not limited to, detailed allegations regarding: (i) the pending IRS investigation; (ii) the Board's rushed defense of McClendon's financial transaction without conducting any investigation; and (iii) continuing fallout from the news of McClendon's wrongdoing. Derryberry Decl., ¶2.

Further distinguishing Proposed Lead Counsel's hard work, Proposed Lead Counsel include in their Amended Complaint allegations reflecting original analysis and investigative work that pre-dates revelations by the media. For example, before Reuters first published an article on the subject on May 8, 2012, Plaintiff alleges that the Board agreed to various amendments to McClendon's employment agreement to enable him to

engage in the hedging activities with less risk of breaching the terms of his employment. Razzouk Decl., *Id.*, ¶4. Proposed Lead Counsel's investigation has also included a public records search looking for documents relating to McClendon's financing transactions relating to the FWPP. *See, e.g., id.* No other counsel has committed the resources to engage in such investigative work. Proposed Lead Counsel's vigorous investigation, reflected in their robust Amended Complaint, demonstrates that they have the ability to lead this complex litigation. Proposed Lead Counsel's demonstrated and persistent refusal to abandon the Company's interests justifies a continued leading role in litigating claims on behalf of the Company.

**B.     Proposed Lead Counsel Have Substantial Expertise in Litigating Shareholder Derivative Actions**

As further described below, Proposed Lead Counsel have the necessary qualifications to lead the derivative litigation on behalf of Chesapeake.

Robbins Umeda is an experienced shareholder derivative litigation law firm. The firm has played a substantial role in some of the most successful shareholder derivative actions in the United States. *See* Firm Resume of Robbins Umeda, attached as Ex. 3 to the Derryberry Decl., at 2-3 *(see, e.g., In re Am. Int'l Group, Inc. Derivative Litig.*, No. 04 Civ. 8406 (DLC) (S.D.N.Y. Mar. 14, 2011) (as lead counsel in consolidated federal action in a global settlement of derivative claims including for breaches of fiduciary, helping secure a $90 million payment to the company – one of the largest monetary recoveries in the history of shareholder derivative actions); *In re Cardinal Health Derivative Litigation*, No. 02-CVG-11-639 (as lead counsel following years of litigation

and extensive discovery, securing $70 million payment to the company and expansive corporate governance); *In re OM Group, Inc. Derivative Litigation*, No. 1:03-cv-0020 (securing as sole lead counsel, among other things, $29 million payment to the company, the termination of the company's long term CEO, and the addition of two shareholder nominated directors). Courts have recognized the high quality of Robbins Umeda's representation of shareholders and class members in this sophisticated type of litigation. Derryberry Decl., Ex. 3 at 4-5.

Moreover, the Robbins Umeda attorneys who will have primary responsibility for prosecuting the action are exceptionally well qualified. George Aguilar, a Robbins Umeda partner who will be leading the firm's work in this case has vast experience in derivative litigation and substantial trial experience prosecuting complex white collar criminal cases, such as corporate, securities, bank, investor, tax foreign currency, and bankruptcy fraud, bank bribery, and money laundering. *Id.* at 5-6.

Similarly, the Holzer Firm has a demonstrated track record of successfully litigating shareholder derivative cases. *See generally* Firm Resume of the Holzer Firm, attached as Ex. 4 to the Derryberry Decl. Michael Fistel, Jr., the Holzer partner who would lead the firm's efforts in this action, has personally participated in shareholder derivative suits that achieved results on behalf of some of the largest companies in the world, including Coca-Cola Co. (where the Holzer Firm served as lead counsel) and Home Depot Inc. (where the Holzer Firm served as co-lead counsel in the federal derivative action). The Holzer Firm, and Mr. Fistel specifically, also served as co-lead counsel in the successful prosecution of derivative claims against Sequenom, Inc. and

Neurometrix, Inc., and, to date, have diligently and competently served as Co-Lead Counsel in Case No. 5:11-cv-985-M, the now-stayed shareholder derivative action before this Court alleging claims on behalf of Chesapeake relating to McClendon's 2008 compensation. Further, the firm is currently appointed as co-lead counsel in a number of noteworthy shareholder derivative actions pending in courts across the country, including cases on behalf of WebMD Health Corp. and Synovus Financial Corp. As its firm resume demonstrates, the Holzer Firm has dedicated its practice to enforcing shareholders' rights, and its experience prosecuting derivative actions makes it well qualified to serve as Co-Lead Counsel in this action.[6] *See* Derryberry Decl., Ex. 4.

Johnson & Weaver represents clients in a wide variety of litigation, with an emphasis on derivative, class, and other complex actions on behalf of investors and consumers. *See* Firm Resume of Johnson & Weaver, attached as Ex. 5 to the Derryberry Decl. In fact, because of its experience representing both shareholders and corporations, Johnson & Weaver stands apart from other plaintiffs-side securities firms in this arena. Johnson & Weaver has been retained not only by shareholders but also by publicly-traded companies to pursue former directors for breaches of fiduciary duty in a number of matters.

For example, Johnson & Weaver was retained by the U.S. Chapter 7 Trustee of Artes Medical, Inc. in an action that was originally filed as a shareholder derivative

---

[6] The Holzer Firm and its attorneys also have been responsible for prosecuting claims under the federal securities and R.I.C.O laws that have resulted in the recovery of millions of dollar for shareholders.

action for breach of fiduciary duty against Artes' former officers and directors in San Diego Superior Court. *Gladstone v. Reinhard, et al.*, Case No. 37-2008-00091039-CU-NP-CTL (Cal. Super. Ct. – San Diego Cnty., filed Sept 4, 2008). After years of hard fought litigation on behalf of the estate in bankruptcy, Johnson & Weaver negotiated a multi-million dollar settlement, which the bankruptcy court approved on September 1, 2011. In finding that "[t]here's no question in my mind that this settlement is in the best interest of this estate," the Honorable Laura S. Taylor stated that, "I want to compliment Mr. Johnson, and I want to compliment on the successful recovery for the estate. The creditors thank you, and I thank you." Derryberry Decl, Ex. 5, Appx. 1.

Further, International Real Estate (a public company with shares listed on the London Stock Exchange) retained Johnson & Weaver to pursue claims for breach of fiduciary duty against former directors of a joint venture company. *Int'l Real Estate PLC v. Oaktree Capital Mgmt., LLC, et al.*, Case No. BC 324973 (Cal. Super Ct. – Los Angeles Cnty., filed Aug. 25, 2005). That case involved alleged damages of approximately $20 million and ultimately settled on confidential, but favorable, terms for Johnson & Weaver's client. Greenland Corporation, a publicly traded company located in San Diego, also retained Johnson & Weaver to pursue claims for breach of fiduciary duty against several former officers and directors. *Greenland Corp. v. Bonar, et al.*, Case No. GIC 842605 (Cal. Super. Ct. – San Diego Cnty., filed Feb. 10, 2005). That case also settled on confidential terms, but with a significant payment to Johnson & Weaver's client.

Based on this track record and the firm's vigorousness in pursuing claims, several courts have recognized that Johnson & Weaver has the experience to handle complex derivative matters. In fact, several courts have specifically acknowledged Johnson & Weaver's excellence in this arena in appointing Johnson & Weaver lead counsel in shareholder derivative actions over competing motions. *See, e.g.*, *In re OmniVision Technologies Derivative Litigation*, Lead Case No. 1-12-CV-216875 (recognizing the "comprehensive and convincing" arguments of Johnson & Weaver in appointing the firm lead counsel over competing firms); *In re Oclaro, Inc. Derivative Litigation*, Lead Case No. C-11-3176 EMC (N.D. Cal.) (appointing Johnson & Weaver lead counsel over competing motion, noting that "the Court is favorably impressed with [Johnson & Weaver's] presentation and knowledge."); *Green Meadows Partners, LLP v. Tompkinson*, No. SACV 06-91 (C.D. Cal.) (appointing Johnson & Weaver's predecessor firm lead counsel over competing lead counsel motions, in a case where seven derivative complaints had been filed, noting that the firm is "exceptionally qualified and experienced"); *Dislevy v. Sacks,* No. ED CV 08-06788 (C.D. Cal.) (appointing Johnson & Weaver's predecessor firm lead counsel over competing motions, noting the firm's "tremendous attributes" and the fact that it had, "in the Court's view, more diligently pursued this particular prosecution.").

Indeed, Proposed Lead Counsel already have brought, and will continue to bring, this substantive expertise in derivative litigation to this action to the benefit of Chesapeake and its shareholders. Proposed Lead Counsel's substantial knowledge and

high level of experience is demonstrated by the particularized and comprehensive proposed Amended Complaint that they meticulously prepared.

Conversely, Proposed Lead Counsel believes many of the litigation tactics engaged in by the other counsel in the 2012 Derivative Actions were not in the best interests of the Company.  The Mallow plaintiffs, for example, allege a vague direct claim for declaratory relief under Section 14A. *See, e.g.*, Mallow Complaint [No. 5:12-cv-436-M, Dkt. No. 1], Count I.  It is unclear how this claim would benefit the Company. Perhaps the purpose of this otherwise meaningless claim for declaratory relief could be explained by the motion for preliminary injunction, which this Court denied due to the absence of any threat of irreparable harm. *See generally* Order of June 6, 2012 [Dkt. No. 55], filed in No. 5:12-cv-436-M. Well before the Mallow plaintiffs filed their Motion for Preliminary Injunction, Proposed Lead Counsel explored the possibility of such course of action and concluded that seeking to enjoin the annual meeting would not be in the Company's best interest. Razzouk Decl., ¶6.

In addition to its substantive expertise, Robbins Umeda, the Holzer Firm, and Johnson & Weaver possess the financial resources and the demonstrated willingness to invest such resources necessary to litigate this complex derivative matter vigorously and effectively on behalf of Chesapeake and its shareholders.

### C.     Proposed Lead Counsel Is in the Best Position to Effectively and Efficiently Lead the Litigation

As discussed throughout, Proposed Lead Counsel have a proven record of seeking to hold Chesapeake's Board accountable for the actions that have caused significant harm

to the Company.  Now Plaintiff and Proposed Lead Counsel offer what they believe to be the best plan to move the derivative litigation forward in an efficient and effective manner.  Proposed Lead Counsel believe they have acted diligently to prosecute the new claims in the manner that would be in the Company's best interests.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion to Consolidate and Appoint Lead Counsel and deny the competing motions seeking similar relief.

DATED:  June 28, 2012              DERRYBERRY & NAIFEH, LLP

                                                *s/ Darren Derryberry*
                                   DARREN DERRYBERRY

                                   4800 N. Lincoln Blvd.
                                   Oklahoma City, OK 73105
                                   Telephone: (405) 528-6569
                                   Facsimile: (405) 528-6462

                                   *Proposed Liaison Counsel for Plaintiffs*

                                   ROBBINS UMEDA LLP
                                   BRIAN J. ROBBINS
                                   GEORGE C. AGUILAR
                                   JAY N. RAZZOUK
                                   LAUREN N. OCHENDUSZKO
                                   600 B Street, Suite 1900
                                   San Diego, CA 92101
                                   Telephone: (619) 525-3990
                                   Facsimile: (619) 525-3991

                                   HOLZER HOLZER & FISTEL, LLC
                                   MICHAEL I. FISTEL, JR.
                                   MARSHALL P. DEES
                                   200 Ashford Center North, Suite 300
                                   Atlanta, GA 30338
                                   Telephone: (770) 392-0090
                                   Facsimile: (770) 392-0029

                                   JOHNSON & WEAVER, LLP
                                   FRANK J. JOHNSON
                                   BRETT WEAVER
                                   110 West A Street, Suite 750
                                   San Diego, CA 92101
                                   Telephone: (619) 230-0063

Facsimile: (619) 255-1856

*Proposed Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2012, I electronically transmitted the *Plaintiff Greg Erickson's Motion to Consolidate and Appoint Lead Counsel with Memorandum of Law in Support* to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the appropriate ECG registrants.

*s/ Darren Derryberry*
DARREN DERRYBERYY